Louis L. Friedman, J.
The respondents herein, Max H. Foley and others, constituting the Board of Standards and Appeals of the City of New York, move for an order vacating an order of certiorari heretofore issued out of this court, dismissing the petition of petitioner, New York City Housing Authority, and confirming the determination made by said respondent, which determination is the subject matter of this proceeding. By way of separate motion, respondent Nadelbach moves for a dismissal of the petition and an affirmance of the same determination made by said Board of Standards and Appeals.
*43 The original certiorari proceeding was brought by petitioner, New York City Housing Authority, by an order made and entered on December 7,1960, said petitioner contending that a determination theretofore made by said Board of Standards and Appeals (hereinafter referred to as “ Board ”) was illegal and contrary to law. As its return to the said petition, the Board submitted an answer denying the material allegations of the petition, as well as a transcript of the record with respect to the parcel of real estate which is the subject matter of this proceeding. Although the real property involved is erroneously described in the transcript of record as bearing street address 743-757 Linden Boulevard, it is properly designated by metes and bounds as an 1 ‘ irregular parcel, located at the northeast corner of Linden Boulevard and Euclid Avenue, ’ ’ with frontages in feet on Linden Boulevard and Euclid Avenue as detailed in said transcript. Thus, the erroneous street number address may be and is disregarded in considering the present application.
This application is unusual in that two governmental agencies find themselves in disagreement with each other. The New York City Housing Authority seeks to reverse and overrule a determination made by the Board of Standards and Appeals. By reason of this unusual circumstance, the Corporation Counsel of the City of New York, who would ordinarily appear for and in behalf of the Board, has not appeared herein for said respondent, and the Board is represented by other private counsel.
The controversy arises out of the following facts. In 1951 petitioner, a public corporation organized and existing under the provisions of the State Constitution and the Public Housing Law, decided to erect and construct a housing project at the corner of Linden Boulevard and Euclid Avenue, to be known as the Cypress Hills Houses. A contract was entered into in March of that year, thereafter amended in March, 1953 and March, 1957, with respect to the construction of said premises. The cost of the project was in excess of $14,000,000, and the project was financed with aid from the State of New York through the State Division of Housing in the form of loans and subsidies, the purpose thereof being to maintain the low-rent character of the dwelling units therein contained. The project was completed in about the year 1957. As a condition for the financial assistance from the State of New York hereinbefore referred to, a tripartite contract was entered into among petitioner, the State Division of Housing, and the City of New York. Pursuant to the specific authorization granted by section 99 of the Public Housing Law, the city expressly undertook in said contract to zone and/or rezone the area within which the project was to be *44 located, in a manner and to the extent set forth in petitioner’s application for financial assistance made to the State Division of Housing. In said contract, it was provided and the city agreed that it “ will thereafter endeavor to maintain such zoning without variance, in a manner satisfactory to the Commissioner until the loan herein has been fully paid during the life of the project. ’ ’ (Emphasis supplied.) Pursuant to section 71 of the Public Housing Law, the Commissioner of Housing made a finding as a condition precedent to the loan provided for by the aforesaid contract, that the city had undertaken the said commitment, the said findings containing the following statement, to wit:
“ [T]he City of New York agrees that it will undertake * * * to plan and re-plan, zone and re-zone the area in the City within which the project sites are located and the areas adjacent thereto in a manner and to the extent set forth in Section 103 of the Application and satisfactory to the Commissioner in accordance with the procedures established by law, and will thereafter endeavor to maintain such zoning without variance
“ The area adjacent to the project is the area surrounding the project site to a distance of two blocks or 500 feet, whichever is the greater.” (Emphasis supplied.)
Under subdivision 2 of section 71 such findings are conclusive.
In 1959, respondent Nadelbach began to assemble the parcel of real property which is the subject matter of the present proceeding. Three of the lots were acquired by private purchase in March of that year, three additional ones were purchased through private sale in May of 1959, and the last portion of the assembled property (Lot 27) was acquired by purchase from the City of New York at a public auction on December 3, 1959. The entire cost to respondent Nadelbach of the subject premises was $26,100, the cash investment by said respondent being $14,600. Within 18 days after the date of the deed from the City of New York, to wit: on December 21,1959, respondent Nadelbach leased the subject premises to the Sun Oil Company and the said lease is now before this court. It provides, as shown in the transcript of the record from the Board, that the entire premises are to be improved with and to be used as a gasoline service station with the entire cost of this improvement to be borne by the tenant. The lease is for a term of 15 years with three options to renew for additional 5-year periods. The rental provided for in said lease is net to the owner, the tenant being required to pay all taxes and other charges. The lease contains an option to the tenant to purchase the entire premises, with the improvements, for the sum of $175,000.
*45 Having assembled the parcel of property as afore-mentioned, respondent Nadelbach filed an application with the Borough Superintendent of Buildings for permission to erect the said gas station. The application was denied, whereupon said respondent applied to the Board for a variance to permit the erection of this gas and service station on the said premises, it being pointed out that they were then located in a residence use district. On November 1,1960, following a series of hearings and an inspection of the premises, “ the Board found that this was an appropriate case in which to exercise discretion to grant under Section 7, Subdivision e of the Zoning Resolution.”, and thereupon granted the application, and made a variance permitting the erection and maintenance of a gas station in said residence use district.
It is this resolution of the Board of Standards and Appeals which the petitioner, New York City Housing Authority, now seeks to overrule through petition for certiorari under article 78 of the Civil Practice Act.
Petitioner alleges, in support of this application, that by virtue of the tripartite contract entered into as herein referred to, the Board was without power to grant a variance, or that said Board should have determined, in view of said contract, that this was not a proper case to exercise its power of discretion; and that in any event, on all of the facts and circumstances, the application should have been denied because it was evident from all of the papers and the facts and circumstances, that the granting of this variance gave respondent Nadelbach a return on his actual cash investment in excess of 30%, and that if the option to purchase were exercised, said respondent would realize a cash profit on his investment in excess of 1,000%. Petitioner further points out that the application for the variance was not based upon any claim of hardship, since respondent Nadelbach acquired and assembled this property with full knowledge of the fact that it was in a residence use district and that construction of a gas station could not be permitted. Neither could there be a claim of hardship because the property could be used for other purposes within the uses permitted by the zoning requirements. The application to the Board was made under the broad provisions of subdivision e of section 7, which authorizes said Board “ in appropriate cases (to) permit for a stated term of years, building and uses not in conformity with the requirements of this article and not otherwise specifically provided for in this section.” In its application to the Board it was urged that the relief should be granted because it would thus “ permit the property to be developed for the only beneficial use that would *46 yield a reasonable return on the investment,” respondent Nadelbach predicating said application largely upon the fact that the assembled plot was irregular in size and shape.
The question which must now be determined by this court is whether, in view of all of the facts and circumstances already referred to, and considering the tripartite agreement to which the City of New York (of which the Board of Standards and Appeals is a part) is a party, the Board had the power under the law to exercise its discretion to grant the application for a variance.
The New York City Charter (ch. 8, §§ 191-202) provides for the appointment of a City Planning Commission and requires the commission to prepare and from time to time to modify a master plan of the city and for its future growth and improvement and development. Section 199 provides that there shall be no change in said plan or any part thereof other than as provided in chapter 8. Under subdivisions c and d of said section, provisions are made for the manner of adding to or changing the city map, subject to approval of the Board of Estimate. Under subdivision 5 of section 666 of the New York City Charter, the Board of Standards and Appeals is empowered 1 ‘ To determine and vary the application of the building zone resolution as may be provided in such resolution.” The Zoning Resolution provides, in section 7 thereof, as follows: “ § 7. use district exceptions. The Board of Standards and Appeals may, in appropriate cases, after public notice and hearing, and subject to appropriate conditions and safeguards, determine and vary the application of the use district regulations herein established in harmony with their general purpose and intent as follows: ’ ’ Subdivision (e) thereof provides: “ Permit, for a stated term of years, buildings and uses not in conformity with the requirements of this article and not otherwise specifically provided for in this section; ”. Section 21 of the resolution directs the Board of Standards and Appeals to “ adopt from time to time such rules and regulations as they may deem necessary to carry into effect the provisions of this resolution. Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this resolution the Board of Standards and Appeals shall have power in a specific ease to vary any such provision in harmony with its general purpose and intent, so that the public health, safety and general welfare may be secured and substantial justice done.”
The power of the City Planning Commission to rezone property is legislative and, of course, different from the administrative power of the Board of Standards and Appeals. Cf. Matter *47 of Levy v. Board of Stds. & Appeals (267 N. Y. 347, 353), wherein the court said: “ The Board does not exercise legislative powers. It may not determine what restrictions should be imposed upon property in a particular district. It may not review the legislative general rules regulating the use of land. It may not amend such general rules or change the boundaries of the districts where they are applicable. Its function is primarily administrative. It has been intrusted only with power to grant a variation in specific cases where strict enforcement of the letter of the restriction would cause practical difficulties or unnecessary hardship.”
Despite the foregoing, the powers of the City Planning Commission are not unlimited (Shepard v. Village of Skaneateles, 300 N. Y. 115, 118). Thus it appears that the powers given to the Board to vary the general restrictions imposed by the Planning Commission are most necessary to preserve the rights of the members of the public. The Board acts as a safety valve by releasing restrictions in certain instances from their possible confiscatory effect in depriving a property owner of a proper use of his property while at the same time requiring him to pay taxes thereupon. The contract entered into between the city, the Authority and the State does not supersede, vitiate or revoke the powers given to the Board by the charter and the code of ordinances. To hold otherwise, as urged by the petitioner herein, might lead to a determination that the replanning and rezoning of the subject area was void as a taking of property without just compensation. All of the parties to the contract are chargeable with knowledge of the zoning resolutions and the authority of the Board to grant use exceptions or variations. The very language of the contract so indicates since it was provided therein merely that the City of New York would11 endeavor to maintain such zoning without variance ” (emphasis supplied), rather than a positive guarantee that the zoning would be at all times maintained. A contract to “ endeavor ” to do something and one to actually do the thing are two different contracts, and no positive agreement may be read into the present contract that the Board could not at any time or under any proper circumstances consider and favorably act upon an application for a variance. Had the contract contained such a positive prohibition against the exercise by the Board of its authority, it would undoubtedly be susceptible to a determination that it was void as depriving the Board of powers granted to it by both the city and the State. Variations in the zoning district by the City Planning Commission must be approved by the Board of Estimate, but no such approval is required under the law for a use *48 variation granted by the Board. Section 7, previously referred to, under which the owner’s application was granted, specifically refers to “ Use District Exceptions ” and provides that the Board may “vary the application of the use district regulations.” It is entirely different from varying the zone. At all times prior to, during and subsequent to the variation, the zone district remained residential. The variation did not change the zoning district lines in any way but merely permitted, in a district zoned for residential purposes, a nonresidential use, to wit: a gasoline station, for a limited time, under specific conditions and safeguards. While the finding of the State Commissioner of Housing under section 71 of the Public Housing Law was based upon an agreement by the city and the Authority to ‘ ‘ endeavor to maintain such zoning without variance, ’ ’ the words “ without variance ” had reference to a change in the zone from residential use to other uses, and those words may not be construed to prohibit the exception in a use district as provided in the resolution.
Neither the State of New York nor the State Commissioner of Public Housing are parties to this proceeding and it does not appear, as far as this proceeding is concerned, that they are aggrieved parties nor that they have objected to the variation nor requested petitioner to oppose the application or to seek a review of the determination thereon. On this record it may not be held that the exception granted to the owner is ‘ ‘ likely to depreciate unduly the value of such project ”, which is what the city and the Authority undertook to prevent. From an examination of the record and the exhibits attached to the return, it would appear that rather than depreciating unduly the value of the project, such value will be enhanced by the intended use. The transcript of record shows photographs of an unsightly, awkward and rubbish-laden lot. The photographs on pages 29a and 30a show in addition that the lot is depressed below the street level, thus creating a danger and an attractive nuisance to children in the neighborhood. Other photographs contained in the transcript show that there are many gasoline stations on Linden Boulevard within the several block area surrounding the Cypress Hills Project. Certainly a neat-looking improved parcel, such as is shown in the architect’s drawing on page 22 of the transcript, is preferable for aesthetic as well as safety reasons, to the unsightly and dangerous condition of this site as shown in the photographs already referred to. The contention by the City Housing Authority to the effect that the creation of a gasoline station will create a source of danger to children in the neighborhood, as urged by them upon the argument of this *49 motion, is rejected by this court. The court has made a personal inspection of the subject premises for the purpose of fixing more clearly in its mind the relative location of the various places shown in the photographs which are in the transcript and for the purpose of personally viewing that which the Board viewed when it made its inspection. At the time of the court’s inspection, made during the month of November, 1961, the premises appeared in approximately the same condition as shown in the photographs which are part of the papers in this proceeding. In addition, young children were playing on this lot amongst the cans, refuse, and other dangerous instrumentalities thereon contained. To urge upon this court that the presence of a neat, well-constructed and well-maintained gas station would present a greater source of danger to these children than the existence of the present vacant lot, is to ask the court to surrender reason and the results of its own inspection to mere probabilities.
Other variances have been granted by the Board near this same project without opposition from this petitioner. The mere fact that respondent Nadelbach stands to make a substantial profit on his investment is not sufficient to justify a finding by this court that the Board was without power to make the determination which it did. The contract between the State, the city and this petitioner did not deprive respondent Board of its powers under the law.
From the discussion herein, it appears affirmatively that the Board had the power to make its determination and that they acted on a reasonable basis and on sufficient evidence in exercising their discretion. The application was granted subject to appropriate conditions and safeguards, and there is nothing before the court which warrants a holding that the determination of the Board was arbitrary or capricious, and consequently, it may not be set aside. (Matter of Douglaston Civic Assn. v. Board of Stds. & Appeals, 278 App. Div. 659, 660, affd. 302 N. Y. 920; Matter of Sima v. Board of Stds. & Appeals, 278 App. Div. 785.) The Board having exercised its authority within the limits authorized by the zoning resolution, this court may not substitute its judgment for that of the Board. That judgment may not be set aside unless it clearly appears to be arbitrary or contrary to law (Matter of Reed v. Board of Stds. & Appeals, 255 N. Y. 126).
Accordingly, the motions separately made by the respondents to vacate the order of certiorari and to dismiss the petition are in all respects granted, and the determination of the Board is in all respects affirmed.